362 So.2d 1138 (1978)
OUACHITA PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
OUACHITA PARISH SUPERVISORS ASSOCIATION et al., Defendants-Appellants.
No. 13583.
Court of Appeal of Louisiana, Second Circuit.
August 28, 1978.
*1139 Robert P. McLeod by David E. Verlander, III, Monroe, for plaintiff-appellee.
McKinley, Bruscato & Loomis by Anthony J. Bruscato, Monroe, for defendant-appellant.
Kostelka & Swearingen by Robert W. Kostelka, Monroe, Hudson, Potts & Bernstein by Jesse D. McDonald, Monroe, Charles D. Jones, Jefferson, Bryan & Gray by William J. Jefferson, New Orleans, for defendants-appellees.
Before BOLIN, MARVIN and JONES, JJ.
*1140 JONES, Judge.
The Ouachita Parish Supervisors Association and the supervisors employed by the Ouachita Parish School Board appeal a declaratory judgment which decreed that the supervisors were not entitled to participate in the proceeds of a sales tax levied by a Ouachita Parish School Board ordinance passed pursuant to a tax election held on May 25, 1968. The appeal was answered by the Classroom Teachers of Ouachita Parish Teacher's Association seeking an increase in the lower court's award of attorney fees to cover the expenses of attorney fees incurred on appeal. We increase the attorney fee award and as amended affirm the declaratory judgment.
The sales tax proposition submitted to the voters of Ouachita Parish in the May election provided that the proceeds from the tax would be used as follows:
"Eighty-eight percent (88%) of the revenues received by each School Board is to be used for the payment of salaries of teachers, as defined by the State Department of Education, in the elementary and secondary schools of said City and said Parish and is to be divided equally among said teachers in each school system; and Twelve percent (12%) of the revenues received by each School Board is to be used for the payment of salaries of personnel, other than said teachers and school board central office, administration and supervisory personnel, employed by the respective school boards."
The proposition submitted to the electorate and the ordinance imposing the tax were authorized by LSA-R.S. 33:2737.
The Ouachita Parish School Board interpreted the 1968 proposition and ordinance pursuant thereto to exclude instructional supervisors from participating in the proceeds of the sales tax. In 1975 the supervisors employed by the school board made demand upon the school board for a pro-rata share of the sales tax revenue but the school board denied the request. Following the receipt of the request the school board escrowed the portion of the sales tax fund which the supervisors contended they were entitled to receive. In 1977 the board instituted this declaratory judgment action to determine whether the supervisors were entitled to participate in the supplementary salary fund.
The issue is whether the supervisors are teachers within the contemplation of the proposition passed by the voters in May of 1968.
The evidence established that the State Department of Education has never formally defined teachers. The State Department Bulletin # 746 at page 3 does require teachers and supervisors to have a certificate issued by the department based upon their qualifications.[1]
This requirement does not resolve the problem presented because the State Department of Education requires the other professional categories of school personnel to hold the certificate. The bulletin requires supervisors to have qualifications in addition to the teaching certificate. For these reasons the requirement that teachers and supervisors have teaching certificates does not establish that the categories of employment are identical nor that the term teachers include supervisors.
Because of the failure of the State Department to define teachers, the resolution of the meaning of teachers within the contemplation of the sales tax proposition must be determined by using recognized principles of statutory interpretation.
The proposition must be read as a whole and interpreted so that each word, clause and sentence shall be given full effect. Both paragraphs must be read together and *1141 in relation with each other. The meaning of the first section which is in dispute must be determined by interpreting it with the second section to arrive at the overall meaning of the proposition. CC Article 16, LSA-R.S. 1:3, State v. Cazes, 262 La. 202, 263 So.2d 8 (1972) and CHF Finance Company v. Jochum, 241 La. 155, 127 So.2d 534 (1961).
Teachers referred to in the 88% paragraph are distinguished from the added classification of persons described in the 12% paragraph as school board central office, administration and supervisory personnel.
"Twelve percent (12%) of the revenues received by each school board is to be used for the payment of salaries of personnel, other than said teachers and school board central office, administration and supervisory personnel, employed by the respective school boards."
The phrase said teachers in the 12% paragraph can only refer to teachers referred to in the 88% paragraph where the term teachers was first mentioned in the proposition.
Where the word said modifies a term, that term is limited to the previous identification of that same term within the statute. See Antoine v. Consolidated-Vultee Aircraft Corporation, 217 La. 251, 46 So.2d 260 (1950), Reynaud v. Bullock, 195 La. 86, 196 So. 29 (1940). The phrase said teachers used in the 12% paragraph necessarily refers to the same teachers as those identified in the 88% paragraph. The separate identification of school board central office, administration and supervisory personnel clearly demonstrates that supervisory personnel are persons who are separate and distinct from teachers entitled to receive the 88% revenues.
The District Court gave this interpretation as one of its grounds for the decision rendered saying:
"The `12% paragraph' must be read together with the `88% clause' so as to give meaning to the entire resolution.
This excluded from participation in 12% of the sales tax revenues `said teachers' which obviously refers to the teachers in the first paragraph, `and school board central office, administration and supervising personnel'.

A distinction is made between the teachers and the others named. `Teachers' are being put in one category and `school board central office, administration and supervisory personnel in another'."
If supervisory personnel were intended to be included within the term teachers as it was used in the 88% paragraph, there would have been no need for the specific listing of supervisory personnel as persons excluded from participating in the 12% portion of the tax because the term said teachers included first in the list of exclusionary categories of the 12% paragraph would have adequately eliminated the supervisory personnel from participating in the 12% portion of the sales tax proceeds.
The mandate that each word of the proposition be given meaning and effect requires the determination that supervisory personnel be a category of school board employees separate and apart from said teachers within the meaning of the 12% paragraph. The requirement that each paragraph be read together for the determination of the meaning of the whole determines that the supervisors are not included within the term said teachers as used in the 88% paragraph. These rules of interpretation establish that supervisors were not entitled to participate in any portion of the sales tax proceeds.
The evidence proved that supervisors spend no more than 25% of their time in the schools. They maintain their office in the school board administration building. The proposition requires that a teacher must be in the elementary and secondary schools of said parish to participate in the sales tax proceeds. The common understanding of a teacher in the elementary and secondary schools would not include a supervisor who spends most of his time in the school board office and only a small amount of his time in the classroom with the students. The law requires that terms which are clear and free of ambiguity should be *1142 given a meaning in accordance with their common understanding and that the letter of the law shall not be disregarded under the pretext of pursuing the spirit. CC Article 13, LSA-R.S. 1:4, Gill Trailer and Equipment Rentals, Inc. v. S. D'Antoni, Inc. and/or S. D'Antoni Motor Freight Lines, 282 So.2d 714 (La.1973). These guides of interpretation would lead to the conclusion that supervisors are not teachers within the 88% paragraph.
The history of the successful sales tax election of May 1968 calls for a consideration of the propositions defeated in the two elections which preceded it in February of 1968[2] and in June of 1967.[3] Consideration of the two unsuccessful propositions and comparing them with the successful proposition of May 1968 result in the following conclusions:
1. The course of the three sales tax propositions voted upon has been progressively to restrict and finally to eliminate the discretion of the School Board in determining which personnel employed by the School Board are entitled to share in the sales tax revenues. The defeated proposition of June 1967 sought to vest the School Board with complete discretion as to the manner of expending the funds generated from the tax; the second unsuccessful proposition allocated 90% of the revenues to "persons whose positions require a teacher's certificate in the public elementary and secondary schools", and allocated 10% to all other personnel employed by the School Board, and the successful proposition changed the ratios and provided descriptive terminology to identify persons entitled to receive the funds.
2. The possession of a teacher's certificate is not sufficient to qualify personnel as a recipient in 88% of the funds. A teacher's certificate was a requirement of the second unsuccessful proposition but was not included as a requirement in the third and successful proposition.
3. Special intent existed with regard to "school board central office, administration and supervisory personnel". There was no mention of these classifications in either of the first two unsuccessful propositions; the proposition which passed separately identifies these classifications for the first time, and does so with exclusionary language providing that such personnel not share in the revenues.
The history of the May 1968 proposition indicates there was no intent for supervisors to participate in the proceeds of the tax.
The doctrine of contemporaneous construction is a well recognized tool of statutory interpretation. It provides that when an administrative body has over a long period of time placed an interpretation upon a legislative enactment, the interpretation of said body is entitled to great weight in the determination of the meaning of the legislative enactment. Washington v. St. Charles Parish School Board, 288 So.2d 321 (La.1974).
The Ouachita Parish School Board from 1968 until 1975 excluded supervisors from participating in the sales tax revenue. The School Board refused to give the supervisors any portion of the revenue even after it was demanded to do so in 1975 at which time it put that portion of the proceeds which the supervisors demanded into escrow and thereafter filed this declaratory judgment action.
*1143 The School Board was the motivating force in submitting to the electorate the two unsuccessful tax propositions which along with the successful propositions were prepared at its direction. For these reasons it was in the best position to know the meaning of the mandate contained in the successful proposition as to the manner in which the proceeds of the tax were to be distributed. We find the local board's interpretation requires the conclusion that supervisors were not intended to be entitled to participate in the sales tax revenue.
All the foregoing principles of interpretation establish that supervisors were not intended to be included as teachers in the elementary and secondary schools within the contemplation of the tax proposition and for that reason are not entitled to participate in the sales tax revenue.
The statute authorizing the levy of the sales tax requires that the purpose of their use be included in the proposition submitted for voter approval and the ordinance passed pursuant thereto. LSA-R.S. 33:2737(B) and (D). The proceeds of the tax can only be expended for the stated purpose. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (La.1931); Hodnett v. Monroe City School Board, 270 So.2d 598 (La.App.2d Cir. 1972).
The supervisors contend that because they are considered teachers for the purpose of disability retirement (LSA-R.S. 17:762), normal retirement (LSA-R.S. 17:571), tenure (LSA-R.S. 17:441), and sabbatical leave (LSA-R.S. 17:1171, as construed by McDaniel v. Caddo Parish School Board, 347 So.2d 33 (La.App.2d Cir. 1977)), they are entitled to participate in the sales tax proceeds. Though supervisors are considered teachers in these situations, they must be excluded from participation in the proceeds of the tax because supplementing their salary was not within the purpose of the proposed tax levy as set forth in the proposition approved by the voters. Hodnett v. Monroe City School Board, supra.
The Classroom Teachers Association of the Ouachita Teachers Association seeks an increase of $3,500 in the attorney fees awarded by the trial court as authorized by C.C.P. Article 595 to pay for the services rendered by their attorneys subsequent to the trial court's judgment. We believe an award of an additional $2,500 will adequately compensate these appellants' attorneys for the services rendered by them on appeal. For the reasons assigned, we amend and recast the third paragraph of the declaratory judgment to read as follows:
"IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that attorney's fees and costs in the aggregate amount of $7,844.00 for legal services and costs up to and including the appeal of these proceedings are hereby awarded to the CLASSROOM TEACHERS ASSOCIATION OF OUACHITA TEACHERS ASSOCIATION, MS. FRANCESS YELDELL, INDIVIDUALLY AND AS PRESIDENT OF THE CLASSROOM TEACHERS ASSOCIATION, and DR. JEAN REDDY, INDIVIDUALLY, in their respective capacities as class representatives of "Classroom Teachers" and the OUACHITA PARISH SCHOOL BOARD is hereby ordered to pay the said sum from among the escrow funds held by said OUACHITA PARISH SCHOOL BOARD from the 88% portion of said sales tax revenues."
As amended the declaratory judgment is affirmed with all cost of appeal assessed against the Ouachita Parish School Board to be paid from the sales tax revenue held by it in escrow.
NOTES
[1] DEFINITION OF TEACHER CERTIFICATE

. . . . To be eligible for professional service in the schools of Louisiana, a teacher must hold a valid teacher's certificate issued by the Louisiana State Department of Education, the requirements for which are determined by the Louisiana State Board of Education. No person who lacks this certificate shall be legally eligible for administrative, supervisory, teaching, or other professional services in the schools of this state." State Department Bulletin # 746.
[2] . . . . to be used exclusively to supplement other revenues available to the School Boards for the payment of salaries of persons whose positions require a teacher's certificate in the public elementary and secondary schools of the said City of Monroe and Parish of Ouachita, with ninety percent (90%) of the proceeds thereof being dedicated to this purpose, and for the payment of salaries of other personnel employed by the school boards in addition to persons whose positions require a teacher's certificate, with ten percent (10%) of the proceeds being dedicated to this purpose.
[3] . . . . to be used for the payment of salaries of teachers employed in the public elementary and secondary schools and/or for the operation of said schools, including, but not limited to the payment of salaries of other personnel employed in said schools in addition to teachers, and/or for any lawful corporate purposes of the recipients of said tax.